UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **PATRICIA MORRIS** | * | **CIVIL ACTION NO. 12-0710** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

On May 26, 2009, Patricia Ann Morris protectively filed the instant application for Title II Disability Insurance Benefits. (Tr. 84-85). She alleged disability as of May 9, 2008, because of carpal tunnel nerve damage in her hands, fibromyalgia, osteoarthritis developing into rheumatoid arthritis, shoulder tendinitis, and right shoulder "rotator cup repair" surgery. (Tr. 91). The state agency denied the claim at the initial stage of the administrative process. (Tr. 47-52). Thereafter, Morris requested and received a September 30, 2009, hearing before an ALJ. (Tr. 36-46). However, in an August 4, 2010, written decision, the ALJ determined that Morris was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a marinade technician. (Tr. 24-32).

Morris petitioned the Appeals Council to review the unfavorable decision. On January 20, 2012, however, the Appeals Council denied the request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On March 21, 2012, Morris filed the instant complaint for review before this court. She alleges the following errors,

1. for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

2. the ALJ's step four determination that plaintiff can perform her past relevant work as a marinade technician is not supported by substantial evidence.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**Analysis**

**I.**    **Steps One, Two, and Three**

    The ALJ determined at step one of the sequential evaluation process that, despite an alleged disability onset date of May 9, 2008, plaintiff continued to work at the substantial gainful activity level until May 8, 2009, when she ceased working after her place of employment closed. (Tr. 29). At step two, he determined that Morris suffered from severe impairments of status post-bilateral carpal tunnel syndrome repair, status post-rotator cuff repair, fibromyalgia, and hypertension. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 30).

**II.**    **Residual Functional Capacity**

    The ALJ determined that Morris retained the residual functional capacity ("RFC") to

perform medium work, reduced by the ability to only occasionally reach overhead with the right, dominant arm. (Tr. 30).[1]

In so deciding, the ALJ partially credited Morris's testimony, recited some of her activities of daily living, noted that she was receiving unemployment benefits, and ultimately assigned "great weight" to the opinion of the state agency medical consultant, Gerald Dzurik, M.D., whose findings tracked the ALJ's RFC. (Tr. 30-32).[2] Plaintiff contends that the ALJ's

---

[1] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

[2] Dzurik's opinion was premised primarily on a July 25, 2009, consultative examination administered by Phillip Madonia, M.D., at the request of the state agency. (Tr. 175-178). Morris complained to Madonia that she suffered from carpal tunnel syndrome, fibromyalgia, and right

5

RFC is flawed because he erred in his credibility determination, and because new evidence that she submitted to the Appeals Council compels a different outcome.

    a)    Credibility

When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.  The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  However, the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*,  27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements regarding the

---

shoulder pain.  *Id*.  Dr. Madonia noted that Morris was independent with her activities of daily living.  *Id*.  He further noted that she denied any *edema*.  *Id*.  She also denied any seizures, weakness, tremor, *sensory loss* or dysfunction.  *Id*.  She was right-hand dominant, and ambulated without assistance.  *Id*.  She was able to stand on tiptoes and heels, and able to bend and squat without difficulty.  *Id*.  Her grip strength was 4/5 bilaterally, but her effort was poor.  *Id*.  She demonstrated adequate fine motor movements, dexterity, and the ability to grasp objects bilaterally.  *Id*.  She exhibited no edema, cyanosis, or erythema.  *Id*.  She had good tone, with 5/5 strength bilaterally in all muscle groups.  *Id*.  Her sensation was intact throughout.  *Id*.  Her right shoulder x-ray showed no fracture, dislocation, or degenerative changes.  *Id*.  Her range of motion was normal in all joints except her right shoulder which was reduced by around 20 percent.  *Id*.

    Madonia diagnosed fibromyalgia, hypertension, history of carpal tunnel syndrome, and right shoulder pain.  *Id*.  He noted her subjective complaints, but objectively, she demonstrated no more than mildly decreased range of motion in her right shoulder because of pain.  *Id*.  She had good dexterity in her hands and decreased grip strength, but with poor effort.  *Id*.  Madonia did not feel that her hand pain would limit her ability to work.  *Id*.  Accordingly, he opined that based on the examination, Morris should be able to sit, walk, and/or stand for a full workday, and lift/carry objects without limitation, hold a conversation, respond appropriately to questions, and carry out and remember instructions.  *Id*.

    Plaintiff testified at the hearing that Dr. Madonia did not administer all of the tests that he recited on his report.  (Tr. 44).  As this matter is being remanded on other grounds, plaintiff may seek to cross-examine Dr. Madonia, if necessary.

intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were not consistent with the assigned RFC. (Tr. 31). In discounting plaintiff's credibility, the ALJ noted that Morris stated that she was "able to independently bathe, dress, comb her hair, and brush her teeth and performs household chores including laundry, sweeping, dusting, preparing meals and ironing." (Tr. 31). Plaintiff emphasizes that the ALJ incorrectly summed up her ability to handle her personal care needs, because contrary to his findings, she indicated that she had trouble with these activities. *Compare* Tr. 103-104. Even so, however, plaintiff attributed her difficulty with personal care to problems with her hand and her inability to grip items. *Id*. In contrast, the consultative physician, Dr. Madonia, documented in his report that plaintiff was not putting forth good effort on the grip test. (Tr. 175-178). He also opined that her hand pain would not limit her ability to work. *Id*. Furthermore, despite plaintiff's allegations of numbness and swelling of her hands, Tr. 118, Dr. Madonia discerned no evidence of same upon examination. (Tr. 175-177).

     Plaintiff also contends that the ALJ impermissibly discounted her credibility by considering her concurrent, inconsistent representation that she was ready, willing, and able to work by virtue of her receipt of unemployment benefits. (Tr. 31). In support of her argument plaintiff cites to memoranda issued in 2006 and 2010 by Chief ALJ Frank Cristaudo, as cited in *Cook v. Astrue*, Civil Action No. 11-1625, 2012 WL 1658923 (D.S.C. Apr. 19, 2012) *report and recommendation adopted,* 2012 WL 1660659 (D.S.C. May 11, 2012). The memoranda, however, do not prohibit ALJs from considering the receipt of unemployment benefits in their decisions. *Id*. Rather, Chief ALJ Cristaudo stressed that the receipt of unemployment benefits is only one of several factors that the ALJ should consider under the totality of the circumstances. *Id*., *see* 20 C.F.R. §§ 404.1512(b)(3) & (4), and 404.1513(d). Here, it is apparent that Morris's

receipt of unemployment benefits comprised but one factor in the ALJ's analysis. (Tr. 31-32).

In the end, the ALJ effectively favored the medical assessments and limitations recognized by the consultative and agency physicians to the extent that they conflicted with plaintiff's self-professed limitations. The ALJ's discussion met the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

  b)  <u>Evidence Presented to the Appeals Council</u>

Plaintiff next contends that the court should reverse and remand the case for consideration of new evidence that she presented to the Appeals Council. This evidence consists of treatment records and a medical source statement completed by Morris's treating nurse practitioner, Lynette Wade. (Tr. 190-193).[3] The new evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[4]

---

[3] Plaintiff also endeavored to transmit to the Appeals Council an October 11, 2010, medical source statement completed by Steven Venters, M.D. Tr. 17-18; Pl. Brief, Exh. B. However, the statement does not appear in the administrative record, and thus, it does not appear that the Appeals Council considered it. *See* Tr. 5 (describing additional evidence considered by the Appeals Council).

[4] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia, Perez v. Chater*, 77 F.3d 41, 44–45 (2d

The court is not persuaded that the new evidence satisfies the foregoing criteria. For instance, as a nurse practitioner, Wade is not considered an "acceptable" medical source under the regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, only "acceptable medical sources" can provide "medical opinions" to show the severity of a claimant's impairment and how it affects her functional ability. 20 C.F.R. § 1527(a)(2) & 416.927(a)(2). Although the Commissioner is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion, "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p.[5] Furthermore, the associated treatment records reflect that Wade saw plaintiff on March 30 and October 11, 2010. (Tr. 192-193). The stated purpose for the October 11, 2010, visit was so Morris could have her medical providers fill out medical source statement forms. *Id*. The October 11 note reflects complaints of myalgia. *Id*. In contrast, at the time of her March 30, 2010, visit, no myalgia or pain was noted. *Id*. In other words, according to the treatment records, the October 11, 2010, medical source statement documented a deterioration in plaintiff's condition subsequent to the ALJ's decision.[6]

---

Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[5] *See also, Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recognizing that the regulations accord less weight to other sources such as chiropractors than to medical doctors).

[6] Apparently, this evidence formed the basis for a finding of disability effective September 2010, pursuant to a subsequent application of benefits. *See* Tr. 123-127.

9

Thus, the undersigned does not find that the additional evidence submitted to the Appeals Council requires remand for consideration. Nonetheless, because the court intends to remand this matter on other grounds, *see* discussion, *infra*. the Commissioner can address the relevancy and effect of this evidence in the first instance, and is not bound by this court's discussion of same.

**III.    Step Four**

At step four of the sequential evaluation process, the ALJ purported to rely on vocational expert ("VE") testimony to find that Morris was able to return to her past relevant work as a marination technician, as she actually performed the job. (Tr. 32, 39-40).[7]

Plaintiff contends that the ALJ's step four determination is unsupported because the hearing transcript does not reflect any testimony from the VE. The transcript contains the following question and answer,

> Q.   Now, the basis for the denial of the benefit by the Agency is in the record as Exhibit 7-F, which is a residual functional capacity (INAUDIBLE) from [sic] medium work, reduced by the requirement that the – with the dominant upper extremity, overhead reaching, be limited to occasional. Would that incorporate any of the prior work?
>
> A.   Yes, sir.

(Tr. 39-40).

While the transcript does not affirmatively establish that this exchange occurred between the ALJ and the VE, the question posed is technical in nature, and typically is posed to the VE, rather than the claimant. On the other hand, when an ALJ relies on VE testimony, he or she ordinarily will

---

[7] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

inquire at the hearing about the claimant's past relevant work, and then ask the VE to identify and characterize that work as to exertional and skill level, before posing hypotheticals. Here, the ALJ did not bother with this preliminary foundation. *See* Tr. 19-20 (plaintiff told her attorney that no questions were posed to the VE at the hearing concerning characterization of her past relevant work). Furthermore, even assuming that the VE was the person who responded to the ALJ's question, she did not identify which job she was addressing.

According to the state agency, plaintiff's past relevant work consisted of three jobs: a chicken de-boner, *Dictionary of Occupational Titles* ("DOT") Code 525.687-066; marinade injector, DOT Code 522.685-086; and chicken styler, DOT Code 529.687-102. (Tr. 47). Plaintiff reported to the state agency that to perform these jobs, she had to constantly reach, which the agency determined to be inconsistent with an RFC that limited her to occasional overhead reaching with the dominant limb. (Tr. 47, 111). In fact, Morris reported to the state agency that she had to remove chickens from hangers to perform the marinade injector job. (Tr. 111). Although she spent only half of her eight hour work day performing duties as an injector, four hours of reaching exceeds the occasional limitation assigned by the ALJ. Moreover, her need to reach to grasp chickens from hangers suggests an overhead component.

The Commissioner argues that because there is no indication that plaintiff's past relevant work required her to reach overhead with *both* arms, there is no reason why she could not fulfill the need to constantly reach overhead with her non-dominant arm. However, the Fifth Circuit has recognized that

> when making a finding that an applicant can return to his prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work. He must make clear factual

>findings on that issue. The ALJ may not rely on generic classifications of previous jobs.

*Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) (citations omitted).

Here, there is nothing in the record to support a finding that plaintiff could execute the frequent to constant overhead reaching demands of her past relevant work by solely relying on her non-dominant arm, with but occasional support from her dominant arm.  The ALJ clearly did not develop this evidence at the hearing.

The Commissioner further emphasizes that when the ALJ asked Morris at the hearing why she could not perform her past relevant work, she replied only that it was because of difficulty walking and gripping, but failed to mention her professed inability to reach overhead. (Tr. 40).  However, Morris wrote on state agency disability forms that she had tendinitis in her left shoulder and that she could not reach overhead.  (Tr. 109).  The ALJ did not resolve this inconsistency.

Furthermore, when, as here, a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted).  While the ALJ's failure to develop an adequate record does not automatically compel reversal, the court finds that plaintiff was prejudiced because the remaining record does not provide substantial support for the ALJ's determination that Morris could return to her past relevant work – as actually performed.

Assuming, once more, that the person who responded to the ALJ's hypothetical was the VE, her answer, in all likelihood, did not address plaintiff's job as she actually performed it, but instead how that job is generally performed in the national economy.  If so, however, the

testimony indirectly conflicts with the *Dictionary of Occupational Titles*. *See* DOT Code 522.685-086, 1991 WL 674289; Pl Brief, Exh. A (job requires frequent reaching).

In *Carey v. Apfel*, plaintiff, who was status post-amputation of an upper limb, argued that VE testimony that he could work as a cashier or ticket seller was insupportable because it conflicted with the frequent hand manipulation requirements that the DOT specified for those jobs. *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). The Fifth Circuit rejected plaintiff's argument because the VE specifically testified that the identified jobs could be performed with only one arm and hand. *Id.*, at pg. 146. The court also noted that plaintiff's counsel was afforded the opportunity to cross-examine the VE regarding the effects of plaintiff's amputation on his ability to perform the identified jobs. *Id*. Both of those circumstances are lacking in this case. There was no specific testimony from the VE. Moreover, plaintiff was not represented at the hearing, and the ALJ did not afford her the opportunity to cross-examine the VE.

As a result, the court is compelled to find that the ALJ's step four determination is not supported by substantial evidence. *See Latham, supra* (remand required, *inter alia*, because of ALJ's failure to explain how claimant's impairments did not prevent the claimant from returning to past relevant work).

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 28th day of January 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE